Gary POFF, Plaintiff–Appellee,

v.

**WESTERN NATIONAL MUTUAL
INSURANCE COMPANY,**
Defendant–Appellant,

George Klouda;  Robert C. Anderson;
Carl F. Nielsen;  Robert R. Olson;
T.O. Pederson, Defendants.

No. 92–3922.

United States Court of Appeals,
Eighth Circuit.

Submitted June 14, 1993.

Decided Jan. 7, 1994.

James T. Martin, Edina, MN, argued (Dan T. Ryerson, on the brief), for defendant-appellant.

Ronald R. McMillin, Jefferson City, MO, argued, for plaintiff-appellee.

Before WOLLMAN and LOKEN, Circuit Judges, and BOGUE,* Senior District Judge.

* The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

LOKEN, Circuit Judge.

On November 26, 1990, Gary Poff moved to Minneapolis and started work at Western National Mutual Insurance Company ("Western"), expecting to replace its retiring chief executive officer, George Klouda. Friction quickly surfaced, and on December 11 Western's board of directors terminated Poff's employment, effective the following day. Poff returned to his prior position as an insurance executive in Jefferson City, Missouri, and commenced this action seeking damages for breach of an oral contract. A jury found that Western had breached a covenant of good faith and fair dealing and awarded Poff $280,000 in damages. Western appeals, arguing that the judgment entered on that verdict is contrary to Minnesota law. We agree and therefore reverse.

The relevant facts in this case are undisputed. After Poff responded to Western's initial advertisement seeking a successor to Klouda, Klouda personally interviewed Poff in Jefferson City. Poff then wrote Klouda, stating "I intend to accept your offer" and outlining "my thoughts on an executive package." Western's board of directors then interviewed Poff and passed a resolution offering him eleven enumerated terms of employment. Shortly thereafter, Poff wrote Klouda detailing "our package agreement," and Klouda wrote back that "the items [in Poff's letter] appear to be in order." Poff began work the following month. There was no formal written employment contract.

None of the written and oral communications between Poff and Western's representatives contained any reference to the duration of Poff's employment at Western, to the reasons for which he could be terminated, or to any severance benefit. Relying upon these omissions, Western moved for summary judgment, and later moved for judgment as a matter of law during and after the trial, arguing that, under Minnesota law,[1] Poff's employment was an at-will contract terminable by either party at any time without cause.

Poff responded, arguing that the jury could find an express or implied covenant of good faith and fair dealing based upon a number of statements made by Poff and Western during their negotiations—specifically, Poff's comments that he wanted to make "a career move" and to "work until retirement," that he did not want "to jeopardize" his family by taking the position, and that he was "confident you [Klouda] and your board will be fair in your offer"; and Western's statements that it did not want Poff to be "injured" or to make "any sacrifices in moving," that the parties were going to have a "long term relationship," that Western treats its people "fairly," and that there would be no written contract because "a handshake is good enough." Poff also argued that a covenant of good faith and fair dealing could be derived from a passage in Western's employee handbook: "We pride ourselves on treating our employees fairly and in a consistent manner, eager to promote from within whenever possible." And he pointed to the deposition testimony of two Western board members that parties to an employment relationship should negotiate in good faith.

The district court denied Western's motions and instructed the jury that it should award Poff damages if it found:

First, that the defendant, through its officers by its actions in negotiating with plaintiff, led plaintiff to a reasonable belief that it was dealing with him in good faith and fair dealing; and,

Second, that the plaintiff and defendant, through its officers, entered into an oral contract of employment; and,

Third, that the defendant terminated the plaintiff's employment without giving him an opportunity to perform his duties as president and chief executive officer for a reasonable period of time; and,

Fourth, that in terminating the plaintiff, the defendant did not act in good faith and fair dealing; and,

Fifth, as a direct result, the plaintiff was damaged.

The jury returned a general verdict awarding Poff $280,000 in damages. The district court denied Western's postverdict motions

---

1. The district court held, and the parties agree, that Minnesota law governs this diversity action.

and entered judgment in Poff's favor on the jury verdict. This appeal followed.

We review issues of Minnesota law *de novo. See Salve Regina College v. Russell,* 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). Under Minnesota law, absent a contrary agreement by the parties, employment is presumed to be at-will, permitting an employer to dismiss an employee for any reason or for no reason at all. *See Harris v. Mardan Business Sys., Inc.,* 421 N.W.2d 350, 354 (Minn.Ct.App.1988). "A hiring for an indefinite term is terminable at will." *Cederstrand v. Lutheran Bhd.,* 263 Minn. 520, 117 N.W.2d 213, 221 (1962).

To overcome this presumption, Poff had to prove that Western made "oral or written statements with specific and definite provisions, and not general statements of policy." *Lindgren v. Harmon Glass Co.,* 489 N.W.2d 804, 810 (Minn.Ct.App.1992). "[G]eneral statements regarding job permanence and job security are not definite offers" and do not modify the at-will relationship. *Piekarski v. Home Owners Sav. Bank,* 956 F.2d 1484, 1489 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 206, 121 L.Ed.2d 147 (1992). *See also Simonson v. Meader Distribution Co.,* 413 N.W.2d 146, 148 (Minn.Ct.App.1987) (discussions of "long-term employment"); *Degen v. Investors Diversified Servs., Inc.,* 260 Minn. 424, 110 N.W.2d 863, 865–66 (1961) (employee told to consider his job a "career situation"). Because Poff relies exclusively upon "general statements regarding job permanence and job security," we conclude that his employment was at-will. *Compare Corum v. Farm Credit Servs.,* 628 F.Supp. 707, 712–15 (D.Minn.1986).

Seeking to avoid the normal legal consequences of an at-will relationship, Poff argues that he may recover because Western breached an express or implied covenant of good faith and fair dealing. The district court accepted that argument and so instructed the jury. However, the Minnesota Supreme Court has squarely held that there is no implied covenant of good faith and fair dealing in Minnesota employment contracts. *See Hunt v. IBM Mid Am. Employees Fed. Credit Union,* 384 N.W.2d 853, 858–59 (Minn.

1986), followed in *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1245 (8th Cir. 1991), *Stowman v. Carlson Cos.,* 430 N.W.2d 490, 494 (Minn.Ct.App.1988), and other cases. To the extent there is contrary language in *Eklund v. Vincent Brass & Alum. Co.,* 351 N.W.2d 371, 378 (Minn.Ct.App.1984), we conclude that *Eklund* has been overruled by *Hunt* and subsequent Minnesota Court of Appeals decisions.

Although the Minnesota courts will not imply a covenant of good faith and fair dealing in employment contracts, recent cases recognize that there can be an express covenant to this effect. However, "general policy statements do not create such a covenant." *Stowman,* 430 N.W.2d at 494. Under *Hunt,* there must be specific and definite terms that meet the contractual requirements of an enforceable unilateral offer. 384 N.W.2d at 858–59. *See also Lindgren,* 489 N.W.2d at 810; *Simonson,* 413 N.W.2d at 148. In other words, the same specificity required to modify the at-will relationship is also required to create an express covenant of good faith and fair dealing.

As discussed above, Poff presented no evidence that any Western representative made any offer or promise relating to the duration of his employ or the providing of severance benefits that would satisfy the specificity requirements for an enforceable express covenant under Minnesota law. Likewise, the general statement in Western's employee manual that, "[w]e pride ourselves on treating our employees fairly and in a consistent manner," is not sufficiently definite to permit the jury to find an enforceable covenant of good faith and fair dealing. *See Miller v. CertainTeed Corp.,* 971 F.2d 167, 171–72 (8th Cir.1992); *Hughlett v. Sperry Corp.,* 650 F.Supp. 312, 314–15 (D.Minn. 1986). Poff relies heavily upon *Eklund,* which reversed the grant of summary judgment dismissing a terminated employee's claim of a permanent employment contract under an express covenant of good faith and fair dealing. However, *Eklund* has since been distinguished on the ground that the plaintiff in *Eklund* presented evidence of a written promise by the employer that em-

ployment would "run until the plaintiff chose to retire." *Harris,* 421 N.W.2d at 354. Poff presented no comparable evidence in this case.

A postverdict motion for judgment under Fed.R.Civ.P. 50(b) should be granted when, as a matter of law, the opposing party has failed to make a case. *Davis v. Burlington N., Inc.,* 541 F.2d 182, 186 (8th Cir.), *cert. denied,* 429 U.S. 1002, 97 S.Ct. 533, 50 L.Ed.2d 613 (1976). On the undisputed facts of this case, we conclude that the district court's instruction to the jury and its denial of Western's motion for judgment as a matter of law were contrary to well-established principles of Minnesota employment law. Therefore, Western is entitled to judgment dismissing Poff's breach of contract claim,[2] and we need not consider other issues Western has raised on appeal.

The judgment of the district court is reversed, and the case is remanded with instructions to enter judgment in favor of Western.

---

[2]. The district court did not submit Poff's promissory estoppel claim to the jury. Without cross appealing, Poff argues that he proved the elements of that claim. We doubt that the issue is properly before us. We also note that any promissory estoppel recovery would be limited to Poff's reliance damages—"what he lost in quitting the job he held." *Grouse v. Group Health Plan, Inc.,* 306 N.W.2d 114, 116 (Minn.1981). It is undisputed that Poff immediately returned to his prior employment in Missouri with no reduction in income or other monetary loss.